#29191-a-JMK
**2021 S.D. 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

JASON MICHAEL MILES,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE M. BRIDGET MAYER
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff and
                                           appellee.


JUSTIN L. BELL of
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota                       Attorneys for defendant and
                                           appellant.

* * * *

CONSIDERED ON BRIEFS
AUGUST 24, 2020
OPINION FILED **02/24/21**

#29191

KERN, Justice

[¶1.]     Jason Miles (Miles) pled nolo contendere to three counts of possession of child pornography, a Class 4 felony, pursuant to a plea agreement. The circuit court sentenced him to ten years in the state penitentiary, with six years suspended on each count and credit for time served. The court ordered counts 1 and 2 to be served consecutively with count 3 to run concurrently. Miles appeals, contending that his sentence violates the Eighth Amendment and constitutes an abuse of discretion. We affirm.

**Facts and Procedural History**

[¶2.]     In January 2019, Division of Criminal Investigation (DCI) Special Agent Toby Russell (Agent Russell) conducted an online investigation into the practice of sharing child pornography files using the BitTorrent network.[1] Agent Russell connected to Miles's computer using special investigative BitTorrent software and obtained a partial download of two individual video files located at an Internet Protocol (IP) address in Pierre, South Dakota. Agent Russell selected these files because the file names indicated that they may contain child pornography. One of the files contained a video of graphic child pornography, but the other file could not be viewed.[2] He obtained a subpoena for the subscriber

---

1.     BitTorrent is a type of Peer to Peer (P2P) file sharing software that allows users to connect to other users of the BitTorrent software. Once connected, "Torrent" files may be downloaded from another user's computer.

2.     Agent Russell focused his investigation on the viewable video file on Miles's computer, because he recognized the specific file name and video as one frequently downloaded by those using child pornography. The seventeen-
                                                                    (continued . . .)

-1-

#29191

information for this IP address held by Midcontinent Communications.  The information received from Midcontinent revealed that Miles was the customer using this IP address in Pierre.

[¶3.]	In early February 2019, law enforcement officers obtained a warrant to search Miles's house.  During the search of his residence, Miles told law enforcement that he did not know why his IP address was associated with child pornographic activity.  Miles admitted that he used BitTorrent but said that there was nothing on any of his computers that related to child pornography.  However, after conducting a search of his computer's hard drive, the forensic analyst discovered 18 separate images of child pornography.[3]  Miles claimed that, although the images were found on the hard drive, none of the images were accessible from his desktop.  Miles claimed that the computer's operating system automatically saved the images in an area of the computer inaccessible to him without special software.  However, prior to being saved, the files containing the images had to be

---

(. . . continued)
    minute video depicted an adult male engaging in anal and oral intercourse with a prepubescent girl.

3.	DCI agents also found 18 additional images of child erotica and 45 images which appeared to depict individuals younger than 18 involved in sexual acts. Because of the difficulty in discerning the ages of the children in the images, the agents were unable to conclusively determine whether the images constituted child pornography under SDCL 22-24A-3(3).  Agents also located numerous search terms on Miles's computer which were commonly used to find and download child pornography.

downloaded on Miles's computer and opened.[4] None of the other electronic devices law enforcement seized from Miles's house contained child pornography.

[¶4.] In July 2019, a Hughes County grand jury indicted Miles on ten counts of possession of child pornography under SDCL 22-24A-3(3).[5] Pursuant to the terms of a plea agreement, on August 20, 2019, Miles pled nolo contendere to three counts of possession of child pornography in exchange for dismissal of the remaining seven counts. After the entry of his plea, the court ordered a presentence investigation and a psychosexual evaluation.

[¶5.] Miles appeared for sentencing on November 14, 2019. The court sentenced Miles on each count to serve ten years in the state penitentiary with six years suspended and gave him credit for time served. The circuit court ordered

---

4. All but one of the illegal images were found in the System Volume Information. The System Restore file automatically saves the system to a restore point at regular intervals so that, if a problem develops, the user can recreate the system and all data at that save point. Miles's computer automatically saved the images to the restore point when Miles downloaded and opened them. These files were hidden from Miles within the System Volume Information unless Miles used special software to retrieve them.

5. SDCL 22-24A-3(3) provides:

> A person is guilty of possessing, manufacturing, or distributing child pornography if the person: (1) Creates any visual depiction of a minor engaging in a prohibited sexual act, or in the simulation of such an act; (2) Causes or knowingly permits the creation of any visual depiction of a minor engaged in a prohibited sexual act, or in the simulation of such an act; or (3) Knowingly possesses, distributes, or otherwise disseminates any visual depiction of a minor engaging in a prohibited sexual act, or in the simulation of such an act. . . . A violation of this section is a Class 4 felony. If a person is convicted of a second or subsequent violation of this section within fifteen years of the prior conviction, the violation is a Class 3 felony.

counts 1 and 2 to be served consecutively and count 3 to be served concurrently, providing for 20 years of supervision. Further, the court ordered that Miles complete sex offender treatment during his incarceration. Miles appeals, raising two issues for our review:

    I.    Whether Miles's sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.

    II.    Whether the circuit court abused its discretion in sentencing Miles.

### Standard of Review

[¶6.]      When reviewing a sentence challenged on Eighth Amendment grounds, we conduct a de novo review. *State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486. "We generally review a circuit court's decision regarding sentencing for abuse of discretion." *Id.*

### Analysis and Decision

*Cruel and Unusual Punishment*

[¶7.]      "The Eighth Amendment to the United States Constitution . . . prohibits 'cruel and unusual punishments,' which the United States Supreme Court has interpreted to include 'the right not to be subjected to excessive sanctions.'" *State v. Quevedo*, 2020 S.D. 42, ¶ 19, 947 N.W.2d 402, 406 (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183, 1190, 161 L. Ed. 2d 1 (2005)).

[¶8.]      In reviewing a sentence challenged under the Eighth Amendment, our first determination is "whether the sentence imposed is grossly disproportionate to its corresponding offense." *State v. Yeager*, 2019 S.D. 12, ¶ 4, 925 N.W.2d 105, 108. A review for gross disproportionality requires us to "first compare the gravity of the

offense—i.e., 'the offense's relative position on the spectrum of all criminality'—to the harshness of the penalty—i.e., 'the penalty's relative position on the spectrum of all permitted punishments.'" *State v. Rice*, 2016 S.D. 18, ¶ 13, 877 N.W.2d 75, 80. And, "[i]f the penalty imposed appears to be grossly disproportionate to the gravity of the offense, then we will compare the sentence to those 'imposed on other criminals in the same jurisdiction' as well as those 'imposed for commission of the same crime in other jurisdictions.'" *Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d at 489 (quoting *Solem v. Helm*, 463 U.S. 277, 291, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983)).

[¶9.]	We begin this relatively straightforward review by examining the gravity of Miles's offense. Miles possessed child pornography—that is, images and videos depicting the criminal victimization and exploitation of children. As we observed in *State v. Bruce*, children are harmed during production of each video and picture. 2011 S.D. 14, ¶ 30, 796 N.W.2d 397, 406. In recognition of the severity of this conduct, the Legislature criminalized each act of downloading an image, extending legislative protection to each exploited child in each picture. *Id.* Possession of these images is an egregious offense because it not only perpetuates the harm to some of the most vulnerable members of our society, but it also invades their privacy and furthers the profit motive of the manufacturers and distributors of child pornography. *State v. McKinney*, 2005 S.D. 74, ¶ 29, 699 N.W.2d 460, 468-70 (citing *United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998)).[6]

---

6.	*See also United States v. Weis*, 487 F.3d 1148, 1153 (8th Cir. 2007) ("attempt[s] to divorce the consumption of child pornography from the harm

(continued . . .)

[¶10.]     Miles argues that he is less culpable and the offense is less serious because he did not produce the child pornography, did not commit sexual acts with minors, and did not have the child pornography in a readily accessible part of his computer. In Miles's view, the sentencing court erred in assessing the gravity of the offense because it did not apply the factors set forth in *Bruce*, 2011 S.D. 14, 796 N.W.2d 397.

[¶11.]     In *Bruce*, the circuit court sentenced the defendant to serve 100 years in prison for possession of 55 counts of child pornography. *Id.* ¶¶ 1-2, 796 N.W.2d at 400. Bruce appealed, challenging his sentence on Eighth Amendment grounds. *Id.* ¶ 27, 796 N.W.2d at 405. He argued that due to the wide range of conduct criminalized in SDCL 22-24A-3—including not just possession, but also manufacturing and distributing the images—the sentencing court must insure that the most severe penalties should be reserved for the most serious conduct and offenders. *Id.* ¶ 31, 796 N.W.2d at 406-07. Because his offenses involved only possession of the images, Bruce argued the circuit court erred by imposing the lengthy sentences. *Id.* ¶ 34, 796 N.W.2d at 408.

[¶12.]     Concluding that the sentences were grossly disproportionate to the "offense and offender," this Court remanded for resentencing with the

---

(. . . continued)
    inflicted upon its victims ha[ve] been rejected by Congress . . . and the Supreme Court."); *United States v. Whiting*, 165 F.3d 631, 634 (8th Cir. 1999) ("The purpose of laws prohibiting child pornography is not to police the morals of the public, but to protect children . . . ."); *United States v. Coutentos*, 651 F.3d 809, 817 (8th Cir. 2011) ("The ongoing harm is to the victim's 'reputation and emotional well-being' . . . 'haunting the children in years to come.'" (citations omitted)).

recommendation "that courts look at two additional determinants when assessing the seriousness of a child pornography offense: (1) the specific nature of the material and (2) the extent to which the offender is involved with that material." *Id.* ¶¶ 32, 39, 796 N.W.2d at 407, 409 (quoting *State v. Blair*, 2006 S.D. 75, ¶ 83, 721 N.W.2d 55, 76 (Konenkamp, J., concurring in result)).

[¶13.]        Miles argues that the factors in *Bruce* control our analysis and that the circuit court erred by not assessing them. While we agree that these factors are useful considerations for a circuit court in assessing "the circumstances of the crime" and are relevant to "the gravity of the offense[,]" *Chipps*, 2016 S.D. 8, ¶ 36, 874 N.W.2d at 488, they are neither controlling of our gross disproportionality review, nor mandatory considerations for the sentencing court. As we reiterated in *State v. Rice*, our Eighth Amendment jurisprudence has undergone a course correction. 2016 S.D. 18, ¶ 21, 877 N.W.2d at 83. "[W]e depart[ed] from *Bonner* (and its progeny [including *Bruce*, 2011 S.D. 14, ¶ 32, 796 N.W.2d at 407]) to the extent that its Eighth Amendment analysis deviates from that explained in *Chipps*." *Id.*

[¶14.]        Here, Miles downloaded and possessed 18 images of child pornography and a video of child pornography. The psychosexual evaluation described these images and the video, and they speak for themselves.[7] Relying upon the range of conduct discussed in *Bruce*, Miles argues that his actions fall on the lower end of the

---

7.    Pornographic images found in Miles's possession included depictions of children between the ages of 4–14 years of age exposing their breasts, genitalia, or rectums. Several images also showed children with adult males exposing their genitals or penetrating the children vaginally or anally.

spectrum and that the prohibited materials found on his computer were more akin to "lewd exhibitionism." 2011 S.D. 14, ¶ 31, 796 N.W.2d at 406-07. While we disagree with Miles's characterization, at least with respect to some of the images located on his computer, regardless of how they are described, his knowing possession of such material unquestionably constitutes possession of child pornography under SDCL 22-24A-3, a grave offense.

[¶15.]     Next, we examine the harshness of Miles's penalty. Miles received three ten-year sentences, each with six years suspended. The court ordered two of the sentences to run consecutively, with the final sentence running concurrently. However, our analysis under the Eighth Amendment is "not concerned with the harshness of a penalty relative to the range of punishments permitted for a particular offense." *Rice*, 2016 S.D. 18, ¶ 19, 877 N.W.2d at 82. Rather, "the harshness of the penalty refers to the penalty's relative position on the spectrum of *all permitted punishments*." *State v. Holler*, 2020 S.D. 28, ¶ 13, 944 N.W.2d 339, 343. The spectrum of sentences the Legislature has authorized ranges from the most severe penalties of death (Class A felonies) and mandatory life imprisonment (Class A and B felonies) down to Class 6 felonies carrying a maximum sentence of two years imprisonment. *See Chipps*, 2016 S.D. 8, ¶ 41, 874 N.W.2d at 490; *see also* SDCL 22-6-1.

[¶16.]     The circuit court's sentence leaves Miles parole eligible within a few years, subject to a long period of supervision. The court's sentence is much lower than the most severe punishment available on the spectrum of all criminal punishments and is not grossly disproportionate to his conduct. Because Miles has

not met the threshold inquiry of demonstrating gross disproportionality, our review ends.

*Abuse of Discretion*

[¶17.]    It is well established that "[c]ircuit courts exercise broad discretion in imposing sentences . . . ." *Yeager*, 2019 S.D. 12, ¶ 11, 925 N.W.2d at 110.  The court abuses its discretion when it makes a "fundamental error of judgment, a choice outside the range of permissible choices . . . ." *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83.  "[A] sentence within the statutory maximum [generally] will not [be] disturbed on appeal." *Bruce*, 2011 S.D. 14, ¶ 28, 796 N.W.2d at 406.  Before imposing a sentence, however, the court must become thoroughly acquainted with the character and history of the defendant by considering the "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record[,] as well as the rehabilitative prospects of the defendant." *Yeager*, 2019 S.D. 12, ¶ 12, 925 N.W.2d at 110.

[¶18.]    At the sentencing hearing, Miles urged the court to suspend the imposition of his sentence, place him on probation with no further jail time, and order him to complete mental health treatment.  In support of his request, Miles argued that he had no history of sexual offenses and that a felony conviction would seriously impact his ability to secure future employment.  The State requested three ten-year sentences with six years suspended on each count, all to run concurrently.

[¶19.]    A review of the sentencing transcript reveals that the circuit court considered the salient contents of the presentence report, reflecting Miles's limited

criminal history, as well as the contents of the psychosexual evaluation prepared by Dr. Scott Pribyl. The information contained in these reports revealed that at the time of sentencing, Miles was 38 years old, had no dependents, and had a stable work history for the past four years. Although Miles grew up in an abusive and neglectful family, Miles completed his high school education.

[¶20.] During the presentence interview, Miles reported abusing alcohol, marijuana, and Adderall, and having difficulty with personal relationships and depression. When confronted by Dr. Pribyl, Miles persisted in his claim that he could not remember viewing or accessing child pornography. He also denied intentionally using the search terms found on his computer. Miles did not, however, affirmatively deny viewing the child pornography that law enforcement found on his hard drive.

[¶21.] Prior to imposing the sentence, the circuit court noted that Miles failed to accept responsibility for these offenses. The court found "incredulous," Miles's explanation that he may have accidently downloaded the images of child pornography. The court also rejected any inference that the downloads were the result of Miles's actions while in "a drunken stupor," when contrasted with his repetitive internet searches using terms designed to locate child pornography. "A defendant's remorse and prospects for rehabilitation are proper considerations in sentencing." *State v. Clegg*, 2001 S.D. 128, ¶ 9, 635 N.W.2d 578, 581. Because "rehabilitation must begin with the offender's acknowledgment of personal fault[,] [t]he inability or unwillingness to accept personal responsibility may be considered by a sentencing court as an indicator that a defendant's rehabilitation prospects are

limited." *Blair*, 2006 S.D. 75, ¶ 52, 721 N.W.2d at 68 (citation omitted). The circuit court did not err by considering Miles's lack of remorse and inability to accept responsibility for his criminal conduct.

[¶22.]     Miles also argues that the circuit court abused its discretion by imposing consecutive sentences on counts 1 and 2. In fashioning its sentence, the circuit court observed that it was providing for a long period of supervision for Miles after his release from prison. Although consecutive sentences may be harsh for each offense under SDCL 22-24A-3(3), "[t]he South Dakota Legislature has authorized the[ir] imposition . . . ." *Yeager*, 2019 S.D. 12, ¶ 16, 925 N.W.2d at 111. From our review of the record, it is apparent that the circuit court's sentence was designed to protect the community and ensure that Miles would "not be [engaged in] this kind of conduct" when he rejoined society.

[¶23.]     Finally, Miles contends that this Court has failed to adequately define "abuse of discretion" in the context of criminal sentencing proceedings. He urges us to adopt the standard articulated in *United States v. Garcia*, 512 F.3d 1004, 1006 (8th Cir. 2008).[8] This standard is used to review a district court's application of the sentencing factors in 18 U.S.C. § 3553 "regardless of whether the sentence is inside or outside" the range of the federal sentencing guidelines. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007)). Miles has

---

8.     The Eighth Circuit has determined that "an abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing those factors commits a 'clear error of judgment.'" *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005).

failed to show that the application of these factors would support a finding of an abuse of discretion by the circuit court. Thus, it is unnecessary to graft this standard into our jurisprudence for resolution of this case, and we decline to do so.

## Conclusion

[¶24.] The circuit court's sentence did not violate Miles's Eighth Amendment rights nor did the circuit court abuse its discretion in sentencing Miles for possession of child pornography.

[¶25.] JENSEN, Chief Justice, and SALTER and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶26.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.